UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA M., <br><br> Plaintiff, <br><br> v. <br><br> MARTIN O'MALLEY, Commissioner of Social Security, <br><br> Defendant. | Case No.:  23-cv-354-KSC <br><br> **ORDER REVIEWING FINAL DECISION OF THE COMMISSIONER OF SOCIAL SECURITY** |

Plaintiff filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claim for benefits. Doc. No. 1. This Court directed the parties to explore informal resolution of the matter through the meet-and-confer process, but the parties were unable to resolve the case on their own. Doc. Nos. 12, 13. Having reviewed the parties' briefing and the Administrative Record ("AR"), the Court **REVERSES** the decision of the Commissioner in this matter and **REMANDS** the case to the agency with directions to calculate and award benefits.

////

////

////

////

# I. BACKGROUND

The Social Security Administration determined plaintiff was disabled between November 25, 2008, through December 1, 2017. AR 49.[1] After two hearings before an Administrative Law Judge ("ALJ"), who heard testimony from plaintiff and from a vocational expert, the ALJ determined plaintiff was not disabled between December 1, 2017, and July 8, 2021, but became disabled again on July 8, 2021. *Id.* The ALJ's decision in this case adhered to the following seven-step evaluation process for determining if a disability claimant's disability has continued or ended. *See* AR 50.

> At step one, the undersigned must determine whether the claimant has an impairment or combination of impairments which meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CRF 416.920(d), 416.925 and 416.926). If the claimant does, her disability continues (20 CFR 416.994(b)(5)(i)).
>
> At step two, the undersigned must determine whether medical improvement has occurred (20 CFR 416.994(b)(5)(ii)). Medical improvement is any decrease in medical severity of the impairment(s) as established by improvement in symptoms, signs and/or laboratory findings (20 CFR 416.994(b)(1)(i)). If medical improvement has occurred, the analysis proceeds to the third step. If not, the analysis proceeds to the fourth step.
>
> At step three, the undersigned must determine whether medical improvement is related to the ability to work (20 CFR 416.994(b)(5)(iii)). Medical improvement is related to the ability to work if it results in an increase in the claimant's capacity to perform basic work activities (20 CFR 416.994(b)(1)(iii)). If it does, the analysis proceeds to the fifth step.
>
> At step four, the undersigned must determine if an exception to medical improvement applies (20 CFR 416.994(b)(5)(iv)). There are two groups of exceptions (20 CFR 416.994(b)(3) and (b)(4)). If one of the first group exceptions applies, the analysis proceeds to the next step. If one of the second group exceptions applies, the claimant's disability ends. If none apply, the claimant's disability continues.

---

[1] The Court adopts the parties' citations to the certified record in this matter. All other citations reflect pagination assigned by the Court's CM/ECF case management system.

> At step five, the undersigned must determine whether all the claimant's current impairments in combination are severe (20 CFR 416.994(b)(5)(v)). If all current impairments in combination do not significantly limit the claimant's ability to do basic work activities, the claimant is no longer disabled. If they do, the analysis proceeds to the next step.
>
> At step six, the undersigned must assess the claimant's residual functional capacity based on the current impairments and determine if she can perform past relevant work (20 CFR 416.994(b)(5)(vi)). If the claimant has the capacity to perform past relevant work, her disability has ended. If not, the analysis proceeds to the last step.
>
> At the last step, the undersigned must determine whether other work exists that the claimant can perform, given her residual functional capacity and considering her age, education, and past work experience (20 CFR 416.994(b)(5)(vii)). If the claimant can perform other work, she is no longer disabled. If the claimant cannot perform other work, her disability continues. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience.

*See* AR 50; 20 C.F.R. § 416.994(b)(5). Before beginning the seven-step process, the ALJ first established plaintiff's comparison point decision ("CPD"), i.e. "the most recent favorable medical decision finding that the claimant continued to be disabled" was the decision reached on February 27, 2009. AR 51. At the time of the CPD, plaintiff was disabled because her depression "was found to meet listing 12.04 of 20 CFR Part 404, Subpart P, Appendix 1." *Id.* At step one, the ALJ noted plaintiff had the following medically determinable impairments since December 1, 2017: "degenerative disc disease of the lumbar, tobacco related breathing difficulties, history of cirrhosis, morbid obesity, unspecified diastolic heart failure, degenerative changes of the left knee, and depression." *Id.* However, none of plaintiff's impairments met or exceeded the severity of the regulatory listings. *Id.*

At steps two and three, the ALJ found medical improvement had occurred for plaintiff's impairments, and the medical improvement affected plaintiff's ability to work because plaintiff's impairments no longer met or exceeded the severity of the regulatory listings. AR 53.[2] At step five, the ALJ determined plaintiff had the following severe impairments: "degenerative disc disease of the lumbar spine lumbar [*sic*], tobacco related breathing difficulties, history of cirrhosis, morbid obesity, unspecified diastolic heart failure, and depression." AR 53-54.[3] Plaintiff also suffered from non-severe impairments of thyroidectomy and diabetes mellitus. AR 54.

At step six, the ALJ found plaintiff had the residual functional capacity ("RFC") to perform light work, except she could "never climb ladders, ropes or scaffolds"; could climb ramps and stairs, balance, stoop, kneel, crouch, or crawl "occasionally"; and she should "avoid concentrated exposure to extreme cold, fumes, odors, dust, and gases, unprotected heights and moving and dangerous machinery." AR 54. The ALJ also noted plaintiff "was able to understand, remember and carry out simple instructions and tasks." *Id.*

At the final step, the ALJ found no past relevant work. AR 63. The ALJ found plaintiff was "an individual closely approaching advanced age" between December 1, 2017, and July 8, 2021. *Id.* Plaintiff became "an individual of advanced age" on July 8, 2021. *Id.*[4] During the period where plaintiff was closely approaching advanced age, and given plaintiff's RFC, the ALJ found plaintiff could perform jobs that existed in significant numbers in the national economy, such as bagger, packager, and sorter. AR 63-64.

---

[2]   When a Social Security claimant's previous finding of disability was based on the listings, medical improvement that causes a claimant's impairments to no longer satisfy the lisitings is "related to [the] ability to work." 20 C.F.R. § 416.994(b)(2)(iv)(A).

[3]   Because plaintiff's medical improvement was related to her ability to work, the ALJ did not assess the "exceptions" at step four.

[4]   A "[p]erson closely approaching advanced age" is between 50 and 54 years old. 20 C.F.R. § 416.963(d). Age 55 or older is considered "advanced age." *Id.* § 416.963(e). A finding of "advanced age" causes a more significant effect on the claimant's ability to work and triggers the application of "special rules" for assessing the ability to work. *See id.*

However, after plaintiff obtained "advanced age," plaintiff became disabled under a "direct application of Medical-Vocational Rule 202.01." AR 64. The ALJ found "[b]ased on the application for" benefits filed on November 25, 2008, plaintiff's "disability ended on December 1, 2017," but plaintiff once again became disabled on July 8, 2021. AR 65.

Plaintiff challenged the ALJ's findings of non-disability between December 1, 2017, and July 8, 2021, but the ALJ's decision became the final decision of the Commissioner when the Appeals Council declined to overturn the ALJ's finding of a period of non-disability. *See* AR 1-7, 384-87. This appeal followed.

## II. DISPUTED ISSUES

The only issue on appeal is whether the ALJ's RFC assessment was supported by substantial evidence. Doc. No. 14 at 4. More specifically, plaintiff contends the ALJ failed to account for limitations caused by plaintiff's orthopedic impairments in her back and knees. *See generally id.* at 6-8.

## III. STANDARD OF REVIEW

This Court will affirm the ALJ's decision if (1) the ALJ applied the correct legal standards; and (2) the decision is supported by substantial evidence. *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Under the substantial evidence standard, the Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if there is evidence in the record to support more than one rational interpretation, the Court will defer to the Commissioner. *Id.*

Even if the ALJ makes an error, this Court can nonetheless affirm the denial of benefits if such error was "harmless, meaning it was 'inconsequential to the ultimate nondisability determination.'" *Ford v. Saul*, 950 F.3d 1141, 1154 (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008)). The Court's ability to uphold the ALJ's decision is limited in that this Court may not make independent findings and therefore cannot uphold the decision on a ground not asserted by the ALJ. *See Stout v. Comm'r of the Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006).

////

## IV. ANALYSIS OF THE COMMISSIONER'S DECISION

Despite the voluminous record, this case turns on a narrow issue. The parties disagree only as to whether the ALJ properly accounted for plaintiff's orthopedic impairments in her back and knees when the ALJ assessed plaintiff's RFC. *Compare* Doc. No. 14 at 8, Doc. No. 17 at 2 *with* Doc. No. 16 at 3. This is a dispositive issue because if plaintiff had any exertional limitations that would restrict her to "sedentary work" (or less), as opposed to the modified light work the ALJ's decision reflects, a finding of "disabled" would be directed under Medical-Vocational Guidelines Rule 201.09 because plaintiff is closely approaching advanced age, has limited education, and does not have transferrable skills. *See* 20 C.F.R. ch. III, part 404, subpart P, app. 2; AR 63. Thus, plaintiff's physical impairments may dictate whether she was disabled during the period between December 1, 2017, and July 8, 2021. Specifically, if plaintiff were limited to lifting ten pounds or less and limited in her ability to stand and walk no more than "occasionally," her work restrictions would limit her to sedentary work. 20 C.F.R. § 416.967(a).

Plaintiff characterizes the ALJ's RFC analysis as relying on the opinions of state agency physicians S. Pak and L. Tanaka, neither of whom accounted for plaintiff's orthopedic conditions. *See* Doc. No. 14 at 4-6. Plaintiff's knee and back impairments are both documented in the record. *Id.* at 6-7. The ALJ's conclusion that plaintiff could stand and walk six hours out of an eight-hour workday and lift 20 pounds, plaintiff argues, is therefore not supported by the record because the ALJ did not rely on any medical opinion addressing plaintiff's back and knees. *Id.* at 7-9. Instead, plaintiff suggests the ALJ impermissibly drew his own medical conclusions based on the raw medical data contained in the record. *Id.*

Defendant characterizes this case as plaintiff's request for the court to adopt plaintiff's preferred interpretation of the record. *See* Doc. No. 16 at 3-5. Defendant argues the ALJ did not rest his decision entirely on the state agency medical records. *Id.* at 6. Rather, the ALJ considered more recent evidence in the record that rebutted plaintiff's claims of orthopedic impairments. *Id.* Thus, defendant argues, the record as a whole

supports the ALJ's conclusion that plaintiff's orthopedic issues did not render her disabled. *Id.* at 8.

The ALJ took note of plaintiff's orthopedic impairments, noting her "degenerative disc disease of the lumbar spine" and "osteoarthritis of the left knee." *See* AR 55. However, he concluded these two limitations did not restrict plaintiff to sedentary work based on (a) plaintiff's treatment history for both conditions; and (b) rejecting or giving only minimal weight to medical opinions that supported a restriction to sedentary work based on exertional limitations related to standing, walking, and lifting. *See generally* AR 55-62. As a general matter, the two bases substantially overlap because the ALJ's decision to reject supportive medical opinions rested largely on the ALJ's interpretation of plaintiff's medical records and treatment history. *See* AR 60-62. The Court will nonetheless address both bases separately.

### (A)   Plaintiff's Treatment History and Medical Records

The ALJ cited plaintiff's treatment history related to her back and knees as supporting a non-disability finding for the time at issue. *See generally* AR 55-56, 58-59. In so finding, the ALJ cited a vast number of medical records. *Id.* The Court must, accordingly, review the ALJ's findings to determine whether the records at issue were substantial evidence that plaintiff's RFC was properly calculated to allow light work.

### (1)   Records of Treatment History Related to Plaintiff's Back

The ALJ reviewed plaintiff's medical treatment history and made the following assessment about plaintiff's impairments to her back:

> The longitudinal record supported a finding that, since December 1, 2017, there has been an improvement in the claimant's impairments. Treatment notes revealed that the claimant has a history of treatment for her degenerative disc disease of the lumbar spine. However, treatment notes from 2016 revealed that the claimant had no significant objective findings related to her reported lower back pain. She was in no acute distress. She had normal examination of the bilateral lower extremities, with full range of motion, and intact strength and sensation. Treatment notes from Imperial Beach Health Center in January 2017 revealed that the claimant had five out of five strength and normal sensation throughout. Treatment notes from Scripps Mercy

Hospital in February 2017 and May 2017 revealed that the claimant had no complaints of tenderness to palpation of the lumbar spine. Treatment notes from UCSD in June 2017 and September 2017 revealed that the claimant had a normal examination of the back. She had normal strength and was ambulatory. Treatment notes from Imperial Health Beach in October 2017 and December 2017 revealed that the claimant had no tenderness to palpation of the lumbar spine. She had five out of five strength and normal gait.

Treatment notes from Imperial Beach Health Center in January 2018 revealed that the claimant complained of subjective decreased sensation in the left lower extremity. However, she was in no acute distress. She had no tenderness to palpation of the lumbar spine, five out of five strength throughout, and negative straight leg raise bilaterally. She also had a normal gait. An x-ray of her lumbar spine in January 2018 revealed anterolisthesis of L4 on L5 likely from posterior facet arthropathy. Treatment notes from Imperial Beach Health Center in April 2018 revealed that the claimant complained of sudden onset of pain in her lower back. She had positive straight leg raise on the right. However, she was in no acute distress. She had five out of five strength, normal sensation, and intact deep tendon reflexes. An MRI of her lumbar spine in May 2018 revealed multilevel degenerative changes, grade one anterolisthesis of L4 on L5 with mild central canal stenosis, moderate left and mild resulting right neural foraminal narrowing, small saddle shaped disc bulge and mild facet hypertrophy at L2-L3 causing mild to moderate right and mild left-sided neural foraminal narrowing.

Treatment notes from UCSD in June 2018 revealed that the claimant complained of low back pain. However, she had no tenderness to palpation of the lumbar spine. She had good range of motion of the bilateral lower extremities, with intact sensation and five out of five strength. She had negative straight leg raise bilaterally. She was able to heel and toe walk without deficit, albeit with complaints of pain. Treatment notes from Imperial Beach Health Center in August 2018 and October 2018 revealed that the claimant continued to have positive straight leg raise on the right. However, she was in no acute distress. She had no tenderness to palpation over the lumbar spine. She had normal examination of the bilateral lower extremities, with five out of five strength, intact sensation and deep tendon reflexes.

Additionally, although the claimant has received treatment for the allegedly disabling back pain, that treatment has been essentially routine and conservative in nature.

*See* AR 55-56 (internal citations omitted) (citing AR 784-89, 790-800, 806-11, 812-21, 838-42, 879-80, 911-19, 952-53, 974-77, 990-92, 997-99, 1062-65, 1078-80, 1085-87, 1104-14, 1122-48, 1163-74, 1234-39, 1256-59, 1266-71, 1276-85, 1332, 1370-73, 1462-63, 1465, 1498-1501, 1544-47, 1552-55, 1570-72, 1590-95, 1596-1605, 1649-59, 1677-1700, 1732-38, 1858, 1860-61, 2322-31, 2336-38).

A substantial number of the records cited by the ALJ have nothing to do with plaintiff's back. *See* AR 838-42, 879-80, 952-53, 974-77, 990-92, 997-99, 1062-65, 1078-80, 1085-87, 1256-59, 1266-71, 1370-73, 1498-1501. The ALJ's conclusory analysis provides no insight as to how these records support the finding that plaintiff's back did not impose any exertional limitations. Accordingly, these records are not substantial evidence supporting the ALJ's determination.

An equally substantial number of the cited records address plaintiff's back, but they do not convey any information that informs whether plaintiff's back limited her ability to work. *See* AR 784-89, 790-800, 806-11, 812-21, 911-19, 1104-14, 1163-74, 1276-85, 1333, 1465, 1544-47, 1590-95, 1596-1605, 1649-59, 1858, 1860-61, 2322-31, 2336-38. For example, the ALJ cited records indicating plaintiff's back did not hurt when it was poked during examination. *See, e.g.*, AR 787, 809, 1593, 1598. The ALJ's cursory analysis does not explain why a lack of acute pain when plaintiff is poked and prodded translates into an ability to perform the level of standing, walking, and lifting that would be required for plaintiff to perform light work. Other records identify the existence of plaintiff's degenerative disc disease, but they do not include any medical information that informs how plaintiff's back does or does not limit her ability to work. *See, e.g.*, AR 1544-47, 1858, 1860-61, 2336. Although the ALJ cited all these records as supporting a conclusion that plaintiff could perform light work, the Court concludes they are not substantial evidence because they do not have any relation to the exertional limitations that could limit plaintiff's ability to work.

The remainder of the records cited by the ALJ also do not support a finding that plaintiff could perform light work. In fact, they tend to ***rebut*** that finding. *See* AR 1122-

48, 1234-39, 1462-63, 1552-55, 1570-72, 1677-1700, 1732-38. Plaintiff's UCSD progress notes state she is limited to walking no more than "1 block" because of her physiological limitations which are exacerbated by her obesity. *See* AR 1132, 1141, 1683, 1692.[5] This is not substantial evidence that plaintiff could stand and walk for six hours out of an eight-hour workday. If anything, it is evidence showing plaintiff would be limited to sedentary work, if work were even possible. Moreover, many of the records cited by the ALJ supported plaintiff's persistent complaints of pain that limited her ability to stand and walk. *See* AR 1234, 1552, 1570, 1732, 1736. These records are not substantial evidence of improvements in plaintiff's condition, as the ALJ found. Instead, they ***support*** the limitations she claimed at the hearing, and any contrary conclusion by the ALJ is not based on any reasonable inference drawn from this record.

The ALJ concluded his assessment by noting plaintiff's treatment had been "conservative," which in the ALJ's opinion supported a finding that plaintiff could perform light work. AR 56. But the record, when considered as a whole, provides the whole story here. Plaintiff ***needed*** more aggressive treatment for her various conditions, but she was ***limited*** to conservative (and ineffective) treatment because her various co-morbidities (including her obesity and her organ damage) made her ineligible for more aggressive treatments that might have relieved her orthopedic pain. *See* AR 1234, 2033, 2553. As such, the ALJ's comments about plaintiff's conservative treatment are not substantial evidence because they are not based on consideration of the entire record.

The Court has reviewed each record cited by the ALJ as tending to support his conclusion that plaintiff's severe back impairment would nonetheless allow her to perform light work. None of the records even address the exertional limitations that would dictate whether plaintiff could perform light work, sedentary work, or no work at all. In fact, some

---

[5]   As the ALJ acknowledged, plaintiff's morbid obesity is a serious factor because it cases "greater pain and functional limitations than might be expected from her other severe impairments alone." AR 59.

of the records support a conclusion opposite to that reached by the ALJ. The Court concludes the records cited by the ALJ are not substantial evidence.

**(2)   Records Related to Plaintiff's Knees**

The ALJ reviewed plaintiff's medical treatment history and made the following assessment about plaintiff's impairments to her knees:

> As for the claimant's degenerative changes of the left knee, treatment notes from 2017 and 2018 revealed that the claimant had normal examination of all extremities with no gross joint abnormalities. She had five out of five strength and normal gait. Treatment notes from March 2019 revealed that the claimant had mild swelling of the left knee with tenderness to palpation over the medial aspect. She had antalgic gait with difficulty bearing weight on left leg. Treatment notes from May 2019 revealed that the claimant continued to have antalgic gait, but she was not using an assistive device for ambulation. Treatment notes form UCSD in May 2019 and June 2019 reveal that the claimant had decreased range of motion of the left knee and complaints of pain with full extension. She was unable to squat. She had positive effusion and tenderness in the medial joint line. She had positive McMurray's and patellar grind. However, she was ambulating without an assistive device. MRI of her left knee revealed full thickness tear and radial tear of the body of the medial meniscus. An x-ray of her bilateral knees revealed mild bilateral medial compartment joint space narrowing, left worse than right.
>
> The claimant received left knee injections at Girard Orthopedic Surgeons. It was noted that an xray of her left knee revealed osteoarthritic changes. She received injections for her left knee pain. Treatment notes from July 2019 revealed that the claimant was in no acute distress. She had antalgic gait but normal examination of the bilateral lower extremities. Treatment notes from San Diego Coastal Endocrinology Group in August 2019 revealed that the claimant had normal gait. Treatment notes from Imperial Beach Health Center in October 2019 revealed that the claimant continued to complain of knee pain. She had bilateral knee crepitus, and medial and joint line tenderness. However, she had no effusion. She had normal gait and she did not use an assistive device for ambulation. Treatment notes from Imperial Beach Health Center between May 2020 and January 2021 revealed that the claimant complained of difficulty walking and limited activities of daily living due to knee pain. Treatment notes from Girard Orthopedic Surgeons between July 2020 and April 2021 revealed that the claimant complained of bilateral knee pain. It was noted that she had some crepitation and medial joint line tenderness, but not erythema or warmth to the bilateral knees. She continued

to receive injections for her knees.

*See* AR 58-590 (internal citations omitted) (citing AR 861-64, 911-19, 974-77, 1062-65, 1104-14, 1122-48, 1163-74, 1192-21, 1225-30, 1234-39, 1256-59, 1498-1501, 1544-47, 1649-69, 1677-1707, 1711-15, 1732-38, 1805-08, 1865-73, 1983-89, 2004-10, 2018-34, 2028-34, 2163-64, 2171, 2206-10, 2252-53, 2260, 2295-99, 2306-08, 2354-57, 2359-62, 2364, 2538-48, 2549-58).

As with plaintiff's back, some of the cited records do not address plaintiff's knees at all. *See* AR 1104-14, 1225-30, 1711-15, 1805-08. The ALJ's analysis provides no insight as to how these records support the ALJ's conclusion that plaintiff's knees did not impose any exertional limitations. Accordingly, these records are not substantial evidence supporting the ALJ's determination.

Other records do address plaintiff's knees, but they neither support nor refute the ALJ's conclusion that plaintiff's knees did not impose exertional limitations that would have limited plaintiff to sedentary work. *See* AR 861-64, 911-19, 974-77, 1062-65, 1163-74, 1498-1501, 1544-47, 1649-69, 2206-10, 2252-53, 2260, 2295-99, 2306-08, 2354-57, 2359-62, 2364, 2538-48. For example, the ALJ noted plaintiff received a course of analgesic injections to treat her knee pain. *See* AR 59 (citing AR 2354-57, 2359-62, 2364, 2538-48). But all these records do is establish that plaintiff received the injections. They do not convey whether the injections helped plaintiff walk and stand long enough to work at more than a sedentary level, and the ALJ's decision does not explain how the mere fact of plaintiff having received injections in her knees belies her claims that she cannot stand and walk enough to work at a light exertional level. As another example, the ALJ also made multiple references to plaintiff having a "normal gait," or having an "antalgic gait" (i.e., a limp) but being able to walk without an "assistive device." *See, e.g.*, AR 58-59 (citing AR 2206-10, 2295-99, 2306-08). While the ALJ accurately reported the contents of these records, the mere fact that plaintiff could walk without a cane, with or without a limp, do not in and of themselves support the ALJ's finding that plaintiff could stand or walk

consistently during an eight-hour workday. It is not enough to show plaintiff can stand and walk at all. She needs to be able to work at a light exertional level, and because these records do not address the plaintiff's exertional limitations, they are not substantial evidence supporting the ALJ's decision.

Finally, some of the records cited by the ALJ actually ***supported*** the plaintiff's claim that she could not perform light work because her knee problems limited her ability to stand and walk. For example, multiple records cited by the ALJ suggested plaintiff was limited to walking no more than "1 block." *See* AR 1122-48, 1192-21. Physical therapy progress notes from June 11, 2018, noted plaintiff had difficulty walking due to pain; and directed plaintiff to avoid "exacerbating activities," including bending and lifting. *See* AR 1732-38. A series of March 2019 reports noted plaintiff's "leg pain" impaired her mobility to such an extent that she should have assistance with her daily activities; her "constant and severe" pain limited her daily activities; and she had difficulty bearing any weight on her left leg. *See* AR 2004-10. June 26, 2019, records from Girard Orthopedic Surgeons noted that plaintiff's conservative treatment had been ineffective at alleviating her pain, and her symptoms had seriously impacted her ability to engage in ordinary daily activities. AR 2028-34.

Dr. Dana Ryan's examination notes from June 17, 2020, noted plaintiff's knees limited her activities. AR 2163-64. In May 2020, Dr. Danielle Richardson referred plaintiff for a continued course of physical therapy and orthopedic injections due to disabling knee pain. AR 2171. Treatment notes from Girard Orthopedic Surgeons generally showed plaintiff had arthritic knees that caused her substantial pain (which did not respond to conservative treatment). AR 2549-58. All of these records appear in the ALJ's decision as tending to support the ALJ's conclusion that plaintiff could perform light work. They cannot reasonably be interpreted to support the ALJ's determination because the only reasonable inferences drawn from these records are that plaintiff is too impaired to work at a light exertional level. The Court concludes they, and all other records cited by the ALJ

are not substantial evidence supporting the ALJ's conclusion that plaintiff could work at a light exertional level notwithstanding her knee impairments.

### (B) The Rejected Medical Opinions

The ALJ also rejected medical opinions from Dr. Dana Ryan; Dr. Danielle Richardson; Arthur Roeher, DNP, PMHNP-BC; and the Imperial Beach Health Center ("IBHC"); all of whom would have imposed exertional limitations inconsistent with the ALJ's finding that plaintiff could perform light work. *See* AR 60-62. When an ALJ evaluates competing medical opinions in the administrative record, the ALJ must evaluate the persuasiveness of any medical opinions and articulate his or her assessment as to each. 20 C.F.R. § 404.1520c. In evaluating persuasiveness, an ALJ considers the medical opinions' supportability and consistency; and the ALJ may also consider the relationship between the source and the claimant, the source's specialization, and other factors such as the source's knowledge of other evidence, social security requirements, and whether there was subsequently submitted evidence. *See* 20 C.F.R. § 404.1520c(1)-(5). Although an ALJ *may* discuss each of the factors to be considered in his or her opinion, the regulations only *require* the ALJ to explain how he or she considered the most important factors—supportability and consistency—when determining a medical opinion's persuasiveness, unless two conflicting medical opinions are both equally well-supported and consistent with the record. 20 C.F.R. § 404.1520c(b)(2)-(3). Under the current regulations, the ALJ's decision "to discredit any medical opinion" will be upheld if it is "supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).

The ALJ did not expressly make findings related to the consistency or supportability of the opinions at issue. "Consistency" measures how consistent a medical opinion is with other evidence in the record. *See* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). "Supportability" is the extent to which a source presents relevant objective medical evidence and explanations to support its opinion or finding. 20 C.F.R. § 404.1520c(c)(1), 416.920c(c)(1). The ALJ offered the same reason for discrediting each of the four medical opinions at issue in this case: the longitudinal record revealed "stable, objective findings"

about claimant's impairments, which the ALJ backed up with lengthy string citations to plaintiff's historical medical records. *See* AR 60-62. The Court construes this as a conclusion based on consistency rather than supportability, because the ALJ was comparing the various medical sources to other evidence in the record, rather than analyzing whether the information considered by those sources supported (or did not support) their medical conclusions.

Nothing in the ALJ's decision appears to consider the supportability of the medical sources, and the Court concludes the ALJ erred by failing to consider supportability because the regulations ***require*** the ALJ to consider supportability. *See* 20 C.F.R. 404.1520c(b)(2). The ALJ's rejection of these medical sources based on consistency was also flawed because the ALJ relied on the same historical body of medical records that he considered when he assessed plaintiff's residual functional capacity and concluded she could do light work—he did little more than incorporate-by-reference his prior analysis. *Compare* AR 60-62 *with* AR 55-59. But this Court has already concluded the vast body of medical records cited by the ALJ does not constitute substantial evidence supporting the conclusion plaintiff could perform light work because those records were (a) silent as to plaintiff's physical impairments; (b) not probative of plaintiff's ability to perform light work even if they did address plaintiff's physical impairments; or (c) actually supportive of greater work restrictions than the ALJ found. For the same reasons, the Court concludes that same body of medical records is therefore not inconsistent with the medical sources at issue opining that plaintiff suffered from exertional limitations that would preclude light work.[6]

---

[6]   The current regulations for evaluating medical sources apply to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c. A different set of regulations cover the evaluation of medical opinions in claims filed before March 27, 2017. *See* 20 C.F.R. 404.1527. Plaintiff filed her original claim before March 27, 2017. AR 49. Neither the regulations nor case law provide a definitive answer for whether the ALJ's determination in this case—a reassessment of plaintiff's ongoing disability initiated after March 27,

The ALJ further rejected Dr. Ryan's opinion based on a conclusion that it was "inadequate to truly determine the [plaintiff's] limitations regarding basic work activities." AR 60. An ALJ must articulate *why* an opinion is unpersuasive, not merely state a conclusion unsupported by analysis or evidence. *See Tabor v. Kijakazi*, 2:22-cv-1249-JDP (SS), 2023 WL 5673040, 2023 U.S. Dist. LEXIS 155295, at *8-9 (E.D. Cal. Aug. 31, 2023) (collecting cases). The ALJ in this case offered neither explanation nor support for his conclusion that Dr. Ryan's opinion was "inadequate." He simply stated the conclusion as if it were a given. That was an improper basis for rejecting Dr. Ryan's opinion.

The ALJ also faulted Mr. Roeher and IBHC for stating their conclusions that plaintiff was unable to work. *See* AR 62. Medical sources may not opine about the plaintiff's ability to work because the ability to work is a determination reserved solely for the administration. 20 C.F.R. § 416.920b(c)(3). Mr. Roeher and IBHC both stated in their opinions that plaintiff could perform "no work." *See* AR 2125, 2347-48. The ALJ's decision to reject this conclusion was proper; but it does not follow that he could reject otherwise proper aspects of these sources medical opinions solely because the sources also stated conclusions about the ability to work. The record shows that both sources also offered perfectly permissible opinions about exertional limitations: Mr. Roeher opined

---

2017—would be controlled by the current or former regulatory guidelines for evaluating the credibility of medical sources. The primary distinction between the new and old regulations is the abrogation of the so-called "treating source rule," which formerly gave extra weight to medical sources who had an ongoing treatment relationship with a social security claimant. *See Woods v. Kijakazi*, 32 F.4th 785, 787, 789-92 (9th Cir. 2022). But, other than the treating source rule, the new and old regulations consider the same factors, including the "supportability" and "consistency" factors. *Compare* 20 C.F.R. § 404.1520c *with* 20 C.F.R. § 404.1527. The ALJ's decision here does not implicate the treating source rule, so the result would have been the same under the new or the old regulations because weighing the competing medical opinions would have boiled down to supportability, consistency, and other factors under the old regulation. Accordingly, the Court concludes the question of which regulation controls here would have no effect on the outcome of the ALJ's decision or this appeal.

plaintiff was unable to lift, squat, kneel, or continuously stand. AR 2125. IBHC opined that plaintiff could not lift, squat, crawl, kneel, or stand/walk more than two hours per day. AR 2347-48. To the extent the ALJ rejected these opinions because both sources obliquely stated conclusions about plaintiff's ability to work, such rejection was a legal error. The valid portions of the opinions remained valid notwithstanding extraneous comments about issues reserved to the commissioner.

In short, the ALJ's rejection of these medical sources was (1) legally erroneous (for failing to consider supportability and for improperly considering work-related conclusions as tending to discount the validity of otherwise proper medical opinions); and (2) not supported by substantial evidence (because the so-called stable, objective findings in the record were not inconsistent with the sources' conclusions). The ALJ erred by rejecting them.

### (C)    Appropriate Remedy

The decision whether to remand for further proceedings or order an immediate award of benefits is committed to the Court's discretion. *See Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Remand for further proceedings is the default rule. *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). In a rare case, however, where the record clearly establishes the plaintiff is disabled, then there is no point in conducting further proceedings before the agency because further proceedings would serve only to waste agency resources arriving at a foregone conclusion while further delaying plaintiff's needed benefits. *Id.* "Courts have generally exercised this power when it is clear from the record that a claimant is entitled to benefits, observing on occasion that inequitable conduct on the part of the Commissioner can strengthen, though not control, the case for such a remand." *Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014)

Courts in the Ninth Circuit utilize the "credit-as-true rule" in cases where a court decides if remand for an award of benefits is appropriate. *Garrison*, 759 F.3d at 1020.[7] Three factors "must be satisfied" before the Court may remand "with instructions to calculate and award benefits: (1) the records has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony of medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* Even if the rule is satisfied, a court nonetheless retains discretion to remand for further proceedings if the record leaves the court with doubts the plaintiff is in fact disabled. *Id.* at 1021.

### (1) Whether Further Administrative Proceedings Would Serve No Useful Purpose

Further administrative proceedings serve no useful purpose when the record is complete and there are no outstanding issues that must be resolved. *See Garrison*, 759 F.3d at 1021-22; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 (9th Cir. 2007); *see also Benecke v. Barnhart*, 3790 F.3d 587, 595 (9th Cir. 2004) (noting it would be appropriate to remand for an agency to "consider in the first instance an issue that it had not previously addressed"). Giving an ALJ a "mulligan" on assessing the plaintiff's RFC is ***not*** a "useful purpose." *Garrison*, 759 F.3d at 1021-22. Here, the ALJ went through the entire seven-

---

[7]   A court may apply the credit-as-true rule at any time, including for the first time on appeal to the Circuit. *See Garrison*, 759 F.3d at 998-99. In that case, a District Court vacated an administrative denial of benefits and remanded for further proceedings. *Id.* at 999. The Court of Appeals concluded the decision to remand for further proceedings constituted an abuse of discretion and directed the ALJ to calculate and award benefits. *Id.* In fact, if the conditions for applying the credit-as-true rule are met, it can be an abuse of discretion for a court ***not*** to remand with directions to award benefits. *Id.* at 1020. Thus, although plaintiff did not specifically request an award of benefits, the Court must *sua sponte* consider the application of the credit-as-true rule to properly discharge the exercise of the Court's discretion under Ninth Circuit law.

step sequential evaluation process to determine if plaintiff's disability had continued. The ALJ considered all the evidence there was to consider. Nothing suggests there are gaps in the record that must be filled by additional evidence. Accordingly, the Court concludes further administrative proceedings would serve no useful purpose.

### (2) Whether The ALJ Failed to Present Legally Sufficient Reasons for Rejecting Evidence

The standard for the second prong is met if the Court, in reviewing the ALJ's benefits determination, has already determined the ALJ's decision was legally insufficient. *Garrison*, 759 F.3d 995, 1022. In such a case, the Court "need not repeat this analysis" at stage two of applying the credit-as-true rule. *Id.* As the ALJ noted, plaintiff presented evidence at the hearing that she had exertional limitations not compatible with performing light work. AR 55. There were also medical sources who opined plaintiff had exertional limitations incompatible with light work. AR 2125, 2347-48. As was the case in *Garrison*, this Court has already determined the ALJ's decision was unsupported by substantial evidence. The Court need to repeat that analysis here. The second prong of the credit-as-true rule is satisfied.

### (3) Whether The Evidence Would, if Credited as True, Establish Plaintiff's Disability As a Matter of Law

In an ordinary case where the ALJ erroneously found plaintiff could perform "light work," remand would be necessary to determine if modified light work or sedentary work were an option. But this is an unusual case. Here, if plaintiff is limited to sedentary work, a finding of "disabled" would be directed under Medical-Vocational Guidelines Rule 201.09 because plaintiff is closely approaching advanced age, has limited education, and does not have transferrable skills. *See* 20 C.F.R. ch. III, part 404, subpart P, app. 2.; AR 63. As counsel put it at the hearing, plaintiff would "grid out at sedentary" and be qualified for benefits. AR 135. The exertional requirements for "sedentary work" are occasionally lifting small objects (never exceeding ten pounds) and occasional walking and sitting. 20 C.F.R. § 416.967(a). As the Court has already determined, the ALJ improperly discounted

multiple medical opinions that even sedentary work was too strenuous for plaintiff. Even limiting plaintiff to sedentary work would entitle her to benefits. Plaintiff's testimony also described exertional limitations consistent with, at best, sedentary work. *See, e.g.*, AR 130-31 (describing an inability to walk or stand); AR 131 (describing plaintiff's ability to lift "maybe a five-pound sack of potatoes"). If credited as true, this evidence in the record would limit plaintiff to sedentary work, or perhaps no work at all. The record thus establishes plaintiff "grids out," and conclusively establishes her entitlement to benefits. Prong three is, therefore, satisfied.

## V. CONCLUSION

Having review the final determination of the Commissioner in this matter, the Court determines the decision to deny benefits was not supported by substantial evidence. The final decision of the Commissioner is **REVERSED**. Moreover, the record here establishes the three prongs of the "credit-as-true" doctrine. Accordingly, the matter is **REMANDED** to the Administration and the Commissioner is **DIRECTED** to calculate and pay benefits.

**IT IS SO ORDERED.**

Dated: May 17, 2024

Hon. Karen S. Crawford
United States Magistrate Judge